UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATS PRODUCTS, INC., | No. C-10-4880 BZ / EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR AN ASSIGNMENT ORDER** |
| FRANK GHIORSO, *et al.*, | |
| Defendants. | **(Docket No. 302)** |

Currently pending before the Court is Plaintiff ATS Products, Inc.'s motion for an assignment order. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and all other evidence of record, the Court hereby **DENIES** the motion but **GRANTS** in part ATS's request for alternative relief.

## I.   FACTUAL & PROCEDURAL BACKGROUND

ATS initiated this case against Defendants Frank Ghiorso, Thermalguard Technology, LLC ("TGT"), and Thermalguard, LLC ("TG"), asserting, *inter alia*, claims for misappropriation of trade secrets. A jury trial was held as well as a bench trial (because *e.g.*, of the request for a permanent injunction and the assertion of equitable affirmative defenses).

A jury found that seven out of the twelve trade secrets asserted by ATS qualified as trade secrets under California law. *See* Docket No. 271 (FF&CL ¶ 20). Judge Zimmerman agreed in his findings of fact and conclusions of law entered as part of the bench trial. *See* Docket Not. 271 (FF&CL ¶ 21). Judge Zimmerman also found that Defendants' resins were developed using ATS's trade secrets; that Defendants sold a resin developed using ATS's trade secrets to a third party,

Champion Fiberglass, Inc.; and that Defendants disclosed ATS's trade secrets to third parties, including a Korean company by the name of Kangnam Chemical Co. *See* Docket No. 271 (FF&CL ¶¶ 21-24). The Kangnam disclosure was in connection with a Custom Manufacturing Agreement entered into between TGT and Kangnam. *See* Shea Decl., Ex. J (agreement). Under that agreement, Kangnam was to manufacture products for TGT and/or persons designated by TGT[1] pursuant to a product formula provided by TGT. TGT's product formula was based on or incorporated ATS's trade secrets – hence, ATS's trade secrets were disclosed to Kangnam. *See generally* Shea Decl., Ex. G (Ghiorso Depo. at 66).

As part of the bench trial, Judge Zimmerman granted both declaratory relief and a permanent injunction. In ¶ 57 of the permanent injunction, Judge Zimmerman barred Defendants (and anyone in active concert or in participation with any of them) from, *e.g.*, using or assisting another in using any of ATS's trade secrets. *See* Docket No. 271 (FF&CL ¶ 57). In ¶ 58 of the permanent injunction, Defendants were enjoined from retaining any of the trade secrets. "To implement this part of the injunction, Defendants and anyone else covered by [the] injunction" had to return to ATS all documents that contained or reflected the trade secrets. Docket No. 271 (FF&CL ¶ 58). Furthermore,

> to the extent that Defendants . . . once had possession of such documentation [reflecting the trade secrets], but no longer have possession, they must, within . . . **30 days** , inform [ATS's] counsel of the following in writing and in sufficient detail sufficient to allow [ATS] to use it to take effective steps to recover the documentation: (1) all efforts made to re-acquire such documentation; (2) what became of such documentation, including the date they lost control of the documentation; and (3) who presently has possession of this documentation.

Docket No. 271 (FF&CL ¶ 58) (emphasis in original).

---

[1] "Persons" designated by TGT appear to include Champion (as indicated above) and a company formerly known as Gilgwang Greentech and now known as GD Ecotech. *See* Shea Reply Decl., Ex. D (purchase order from TGT, asking Kangnam to make a shipment to Champion Fiberglass); Shea Decl., Ex. J (Agreements, Exs. A, C) (indicating that the resin TG-1009 would be for the exclusive use of Gilgwang Greentech (now known as GD Ecotech) and Dong Myung Chemical Corporation (through Gilgwang Greentech));

In May 2013 (approximately a year and a half after Judge Zimmerman's findings of fact and conclusions of law), ATS took the deposition of Mr. Ghiorso. During the deposition, ATS explored Defendants' compliance with the permanent injunction, including with respect to Kangnam. ATS counsel basically told Mr. Ghiorso at the deposition that his efforts with respect to Kangnam were not enough and asked Mr. Ghiorso to do more. Mr. Ghiorso did not really object. According to counsel for Mr. Ghiorso, after the deposition, he suggested to ATS counsel that ATS counsel prepare a draft of the letter that ATS wanted Mr. Ghiorso to send to Kangnam, which defense counsel would then review. *See* Prescott Decl. ¶ 5.

ATS counsel, however, never sent such a draft to counsel for Mr. Ghiorso. Instead, after the deposition, ATS counsel reviewed the contract between Kangnam and TGT and came up with the idea that TGT should assign its rights under the agreement to ATS – which could be done under the terms of the agreement so long as Kangnam consented. *See* Shea Decl. ¶ 14; *see also* Shea Decl., Ex. J (Agreement § 11.2) (assignment provision).[2] According to counsel for ATS, this will be "the best way ATS could prevent any future misappropriations of ATS trade secrets by Kangnam" as an assignment "would make Kangnam ATS's agent [and] not the agent of [TGT]." Shea Decl. ¶ 14; *see also* Mot. at 5 (arguing that an assignment would mean that "ATS would have a direct contractual relationship with Kangnam"). ATS counsel proposed the assignment to counsel for Defendants but the proposal was rejected. *See* Shea Decl., Ex. L (letter).

---

[2] The assignment provision states as follows:

> This Agreement shall be binding upon and share inure to the benefit of the parties hereto and their respective successors and assigns provided that neither party hereto may assign this Agreement without the written consent of the other party hereto [with certain exceptions]. Where consent is required under this Article, such consent shall not be unreasonably withheld or delayed. In the event of any assignment of this Agreement, the party hereto which makes such assignment shall remain liable for the assigning party's obligations pursuant to Section 10 hereof.

Shea Decl., Ex. J (Agreement § 11.2).

3

## II. DISCUSSION

Based on its opening motion, ATS sought only an assignment of the Kangnam contract – and not to satisfy the money judgment it obtained. *See, e.g.*, Mot. at 8 (arguing that, "[i]n the interests of fairness and justice all rights under the Kangnam Contract should be assigned to ATS without any credit to the judgment amounts"). It was only after the opposition, in which Defendants pointed out deficiencies with ATS's position that ATS changed its tune and asked for alternative relief – more specifically, (1) an assignment to ATS of all of Defendants' rights to payment under the Kangnam contract (*i.e.*, to enforce the money judgment), (2) an order deeming the Kangnam contract null and void and ordering Kangnam to return to ATS all confidential documents it received or made under the contract; or (3) an order requiring Defendants to demand from Kangnam a certification of destruction of records. The Court addresses each request for relief below.

A. <u>Assignment of Kangnam Contract</u>

The relief that ATS ultimately seeks is an order requiring Defendants to assign the Kangnam contract to ATS – and *not* to enforce a money judgment.

   1. <u>California Law</u>

ATS contends first that the Court could assign TGT's rights under the Kangnam contract under California procedure. *See* Mot. at 7-8. This argument is flawed.

ATS is correct that, under Federal Rule of Civil Procedure 69(a), "[a] money judgment is enforced by a writ of execution," and "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located [although] a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). But here ATS is not asking for an assignment in order to satisfy a money judgment.[3] To

---

[3] Accordingly, ATS's references to California Code of Civil Procedure §§ 708.510 and 695.010 are beside the point. *See, e.g.*, Cal. Code Civ. Proc. § 708.510(a) (providing that a "court may order the judgment debtor to assign to the judgment creditor . . . all or part of a right *to payment due or to become due*") (emphasis added); *id.* § 695.010(a) (providing that, "[e]xcept as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment").

Moreover, it does not appear that Kangnam ever owes any money to TGT under the contract; rather, if anything, TGT would owe Kangnam money for manufacturing the resins.

4

the extent ATS suggests that it is simply asking for a proceeding in aid of judgment (*i.e.*, the permanent injunction), there is no need to resort to any specific state procedure. As Judge Zimmerman has already issued a permanent injunction, the only real issue is whether that injunction has been violated, thus warranting a further order commanding compliance, and/or whether there is a need to modify the injunction.

To the extent ATS invokes California Civil Code § 3426.2(c), that section simply provides that, "[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order." Cal. Civ. Code § 3426.2(c). California courts have explained that § 3426.2(c) authorizes mandatory (as opposed to prohibitory) injunctions, such as an injunction that requires the misappropriator to return the fruits of misappropriation. *See FLIR Sys., Inc. v Parrish*, 174 Cal. App. 4th 1270, 1278-79 (2009); *Central Valley General Hospital v. Smith*, 162 Cal. App. 4th 501, 530 (2008). But, as noted above, Judge Zimmerman has already issued an injunction – indeed, one that has mandatory components. Thus, again, the only real issue is whether a further order commanding compliance with the existing injunction is needed and/or whether there is a need to modify the injunction.

2.  Modification of Judge Zimmerman's Injunction

To the extent ATS seeks an assignment of the Kangnam contract as an order commanding compliance with the existing injunction, the Court finds that argument without merit. The injunction imposed by Judge Zimmerman provided for nothing close to an assignment. Indeed, he rejected ATS's proposal for such an assignment.[4] Thus, ATS's request for an assignment of the Kangnam contract must ultimately be construed as a request to modify Judge Zimmerman's injunction. While ATS maintains that Judge Zimmerman never addressed the request for an assignment at any hearing,

---

[4] *See* Docket No. 235 (Pl.'s Proposed Findings & Conclusions ¶ 8) (suggesting the following provision: "Defendants are hereby deemed and adjusted to have assigned fully and without limitation any and all of Defendants' rights, title and interests (but not Defendants' liabilities) in and to any and all of Defendants' contractual arrangements that involve any of the Shea Trade Secrets (and/or are substantially derived from or related to those trade secrets, including without limitation: . . . (B) Defendants' contract and agreements with Kangnam Chemical Company"); Docket No. 257-1 (Pl.'s First Amended Proposed Findings & Conclusions ¶ 11) (suggesting the following provision: "Defendants are hereby deemed and adjudged to have assigned to plaintiff all rights and entitlements (but not liabilities) to the following contractual relations involving any and all Thermalguard PRF Resins: . . . (b) Defendants' contract and/or agreements with Kangnam Chemical Company").

*see* Shea Reply Decl. ¶ 2, the fact remains that no such relief was included in the injunction issued by Judge Zimmerman despite ATS's request.

While a court has the power to modify an injunction, to do so, there must usually be changed circumstances, either legal or factual. *See System Fed'n No. 91 Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961) (stating that "a sound judicial discretion may call for the modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen"; adding that "[t]he source of the power to modify is . . . the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief"); *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir. 2004) (stating that it is well established that "a court has the authority to alter the effect of an injunction in light of changes in the law or the circumstances").

In its papers, ATS has tried to argue changed circumstances but its arguments are unavailing. For example:

(1)  ATS asserts that, "[i]n February 2012, defendants misrepresented their efforts to comply with the Court's injunction by overstating their request to have Kangnam destroy records [*i.e.*, Defendants only asked for one document to be destroyed] and by misrepresenting that Kangnam had agreed to certify destruction of all documents [when Kangnam's e-mail to Mr. Ghiorso did not state such]." Reply at 7-8. But it is not clear what other documents Defendants should have asked to be destroyed. Furthermore, although it does not appear that Kangnam agreed to provide a certification (at least based on the record submitted), Mr. Ghiorso testified in his deposition that he got an oral reassurance that documents had been destroyed – and, in any event, the injunction did not require Defendants to get a certification of destruction. Finally, the relief sought is extreme particularly where there are lesser sanctions (such as requiring Defendants to follow up with Kangnam) that might be more effective.

(2)  ATS contends that, after the injunction was issued, Kangnam has (a) continued to manufacture resins using the misappropriated trade secrets and (b) provided those resins to Champion, which in turn has (c) used the resins in its Flame Shield product, which it has then sold,

*e.g.*, for use in a BART project. *See* Shea Reply Decl. ¶¶ 5-13. But ATS has not offered any concrete evidence that Kangnam has continued to manufacture resins based on the misappropriated trade secrets after the injunction issued. Nor has ATS offered any concrete evidence that, since the injunction issued, Champion obtained any new resins from Kangnam or used any old resins that it had previously obtained from Kangnam before the injunction. Nor is there any evidence that Flame Shield must be manufactured with the resins from Kangnam. In other words, even if Champion's Flame Shield product *previously* used the TG 1074 resin, as ATS maintains, *see* Shea Reply Decl. ¶ 7, that does not mean that the product currently uses that resin. While ATS recently filed a lawsuit against Champion (on May 28, 2013), based on the allegation that Champion was still using the misappropriated trade secrets in its Flame Shield product, as sold to the BART project, *see* Shea Reply Decl. ¶ 13, clearly, the merits of that case have not been resolved yet, and thus there can hardly be said to be any changed circumstances, at least not yet. In sum, the evidence of continued use of misappropriated trade secrets by Kangnam in selling products containing the trade secrets to Champion has not been demonstrated to the satisfaction of the Court. Hence, the Court finds no changed circumstances as a result.

(3)     Finally, ATS argues that, since the injunction, Defendants have "covered up" their communications with Kangnam and GD Ecotech (another third party who bought the resins that were based on ATS's trade secrets). This argument is weak for several reasons. First, nothing in the permanent injunction bars Defendants from communicating with Kangnam or GD Ecotech. Indeed, if anything, the injunction required Defendants to get in touch with the companies to try to get the trade secrets back. Second, the alleged "cover-up" is not as dastardly as ATS tries to portray it. The "cover-up" appears to consist of (1) Mr. Ghiorso's post-judgment practice of deleting e-mails, *see* Shea Reply Decl., Ex. B (Ghiorso Depo. at 88), and (2) Defendants' failure to produce – in response to a subpoena – letters that ATS had sent to GD Ecotech and that Defendants apparently obtained from GD Ecotech.

The first "cover-up" is fairly innocent. At a deposition taken in May 2013, Mr. Ghiorso simply testified that he used to have no practice of keeping or deleting e-mails but then, because of the litigation, "I thought it would be better just to purge everything, because I can't – there's so

many e-mails. I didn't want to have an opportunity for violating what the agreement was between us." Shea Reply Decl., Ex. B (Ghiorso Depo. at 88). Thus, since 2012, his practice is to read an e-mail and then get rid of it. *See* Shea Reply Decl., Ex. B (Ghiorso Depo. at 89). But this practice is not in violation of the injunction. And there is no ongoing litigation that would put on Mr. Ghiorso some kind of document retention requirement.

As for the second "cover-up," the underlying events are as follows. ATS issued a subpoena for testimony and documents to Mr. Ghiorso in or about May 2013. *See* RJN, Ex. K (subpoena). The subpoena called upon Mr. Ghiorso to produce all documents that comprise, mention, or refer to communications with, *e.g.*, GD Ecotech. *See* Shea Reply Decl. ¶ 17; RJN, Ex. K (subpoena). Mr. Ghiorso had obtained from GD Ecotech certain letters (dated March 2012) that ATS had sent to GD Ecotech. Mr. Ghiorso failed to produce the documents in response to the subpoena. As indicated by this description, Defendants' failure to produce the documents is basically immaterial – nothing in the injunction barred Defendants from communicating with GD Ecotech and the letters simply address the fact that ATS prevailed in the trade secret case. In short, ATS makes more of any "cover-up" than is necessary. In any event, these facts, even if considered a changed circumstance, would hardly counsel in favor of the extreme remedy of ordering an assignment of the Kangnam contract to ATS.

Accordingly, there is no basis for modifying the injunction as ATS requests. The relief sought is not only extreme but would contravene the contractual provision that Kangnam consent to any assignment. ATS fails to cite any authority permitting this Court to unilaterally override the contractual rights of a third party.

B.  <u>Assignment of Defendants' Rights to Payment under Kangnam Contract</u>

As noted above, in the event the Court denies ATS's request for an assignment of the actual Kangnam contract, ATS seeks as alternative relief an assignment of Defendants' rights to payment under the Kangnam contract. (Technically, only TGT, and not the other defendants, is a party to the Kangnam contract.)

California Code of Civil Procedure § 708.510 governs orders to assign the right to a payment. Section 708.510(a) provides as follows:

8

    (a)    Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor or to a receiver appointed pursuant to Article 7 (commencing with Section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments . . . .

Cal. Code Civ. Proc. § 708.510(a). Section 708.510(c) provides that,

    in determining whether to order an assignment or the amount of an assignment pursuant to subdivision (a), the court may take into consideration all relevant factors, including the following:

    (1)    The reasonable requirements of a judgment debtor who is a natural person and of persons supported in whole or in part by the judgment debtor.

    (2)    Payments the judgment debtor is required to make or that are deducted in satisfaction of other judgments and wage assignments, including earnings assignment orders for support.

    (3)    The amount remaining due on the money judgment.

    (4)    The amount being or to be received in satisfaction of the right to payment that may be assigned.

*Id.* § 708.510(c).

The Court declines to award the relief requested for two reasons. First, ATS never sought this relief in its opening motion. It was not until Defendants pointed out the deficiency in ATS's initial request for relief, *see* Opp'n at 4 (noting that "ATS does not seek an assignment of a right to payment" but rather assignment of the actual contract), that Kangnam in its reply brief brought up this alternative relief.

Second, it is not clear that Kangnam has owed, owes, or will ever owe TGT any money under their contract – at least ATS has not offered any evidence to suggest such. Indeed, the point of the contract was that Kangnam would be a manufacturing source for TGT; thus, presumably, any money paid would be from TGT to Kangnam and not the other way around.

C.    <u>Order Deeming Kangnam Contract Null and Void</u>

If the Court does not grant ATS's request for an assignment of the Kangnam contract or an assignment of the right to payments under the Kangnam contract, the next relief sought by ATS is (1) an order deeming the Kangnam contract null and void and (2) an order instructing Kangnam to

9

1 return to ATS confidential records received or made by it under the contract. *See* Reply at 9. The
2 Court denies these requests for relief for several reasons.

3 First, neither request was raised by ATS in its opening motion.

4 Second, the request for an order deeming the Kangnam contract null and void is ultimately a
5 request to modify Judge Zimmerman's injunction and, as discussed above, ATS has failed to
6 establish changed circumstances. Furthermore, similar to above, the remedy seems extreme where a
7 "lesser sanction" could be applied first.

8 Third, the request for an order instructing Kangnam to take certain action is problematic;
9 ATS admitted at the hearing that this Court likely does not have personal jurisdiction over
10 Kangnam. *See In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 545 (9th Cir.
11 1996) (stating that, "in order to enforce this injunction against the Republic [of the Philippines],
12 through, for example, contempt proceedings, the district court would have to have personal
13 jurisdiction over the Republic"). Nor is there proof that Kangnam has been given any prior notice of
14 the injunction herein.

15 D.   Order Requiring Further Action by Defendants

16 Finally, ATS asks that, if the Court is not willing to grant any of the relief above, it should
17 still issue an order requiring Defendants to "demand from Kangnam a certification of destruction of
18 records." Reply at 11. Although ATS refers to a destruction of records in its reply brief, it has
19 suggested – in exhibits attached to the Shea reply declaration – that its preference is for a return of
20 records and a certification of such.

21 While, arguably, the Court could deny this request for relief because it was not raised in the
22 opening motion, the Court will not do so for two reasons. First, Defendants indicated a willingness
23 to contact Kangnam again before ATS filed this motion with the Court. Second, in this regard, ATS
24 is not seeking so much to modify Judge Zimmerman's injunction as seeking assistance in
25 implementing the existing injunction. The Court takes note that, under ¶ 57 of the injunction,
26 Defendants are not only barred from using the trade secrets but also are barred from assisting
27 another from using the trade secrets. At the hearing, ATS argued that, by not doing more follow-up
28

with Kangnam, Defendants were effectively (even if passively) assisting Kangnam in using the trade secrets. This position is not without some merit.

Accordingly, the Court hereby orders Defendants to contact Kangnam and ask it (1) to return all information related to Defendants' resins, (2) to provide a certification of return, and (3) to provide a certification of destruction if Kangnam represents that it has already destroyed all such information. The Court acknowledges that ATS has submitted to the Court a proposed letter for Defendants to send to Kangnam and a proposed certification for Kangnam to sign. Because Defendants did not have an opportunity to comment on the proposals, the Court orders the parties to meet and confer so that they can reach agreement on language to be used in the letter and/or certification. The Court forewarns the parties that it expects the parties to reach agreement on the language. If they are not able to reach agreement, then, within a week of the date of this order, the parties shall **jointly** submit a copy of the proposed letter and certification. Where there is a dispute on language, the parties shall highlight the relevant provision and provide their respective proposals on that provision. **The Court forewarns the parties that a party that takes an unreasonable or unsubstantiated position risks being sanctioned.**

### III. CONCLUSION

For the foregoing reasons, the Court denies ATS's motion for an assignment order but grants one of its requests for alternative relief. The Court notes that, to the extent it has denied ATS's requests for relief, the denial is without prejudice. Thus, Defendants are on notice that it is their best interest to make their best efforts to encourage Kangnam to comply. On the other hand, ATS is also advised that, if it seeks modification of Judge Zimmerman's order, it must meet applicable standards and do so with credible proof.

This order disposes of Docket No. 302.

IT IS SO ORDERED.

Dated: August 12, 2013

EDWARD M. CHEN
United States District Judge